UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KATHY HANFLAND,

                            Plaintiff,

                            Case #10-CV-6106-FPG

v.

                            DECISION AND ORDER

PATRICK R. DONAHOE, POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE,

                            Defendant.

---

### I.    Introduction

Plaintiff Kathy Hanfland, an employee of the United States Postal Service ("Postal Service") facility in Rochester, New York, originally commenced this action on March 2, 2010 against Defendant John E. Potter, United States Postmaster General pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the New York State Human Rights Law, Executive Law § 290 ("NYHRL"), NY CLS CPLR §§ 201, *et seq.* (2010), seeking "to correct unlawful discriminatory practices of Defendant." ECF No. 1. By Stipulation and Order filed on September 20, 2012, the parties agreed to: (1) discontinue with prejudice, Plaintiff's claims under the New York State Human Rights Law, N.Y. Exec. Law 296 (1)(a); (2) amend the Complaint such that all causes of action alleged under the Americans with Disabilities Act are alleged under the Rehabilitation Act of 1973, 29 USC § 794, *et seq.* and, for purposes of calculating the statute of limitations, the filing date of claims under the Rehabilitation Act shall relate back to the date of the filing of the Complaint and, for purposes of exhaustion of

administrative remedies, Plaintiff's administrative charges and/or discrimination complaints under the Rehabilitation Act shall relate back to the dates on which she filed the administrative charges and/or discrimination complaints; and (3) amend the caption to *Kathy Hanfland v. Patrick Donahoe, Postmaster General, United States Postal Service*.[1] ECF No. 20.

Defendant now moves for partial summary judgment against Plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P. 56"). ECF No. 21. For the reasons explained herein below, this Court grants Defendant's motion.

## II. Background

The genesis of the Complaint is an alleged on-going personal dispute between Plaintiff, a female Caucasian over age forty, who began working full time for the Postal Service in 2006, and co-worker Tanya Binnert ("Binnert"), both of whom are employed as Mail Processing Clerks at the Rochester, New York Logistics and Distribution Center on Lyell Ave in Rochester, New York. Except as otherwise stated, the undisputed material facts are presented in the parties respective Local Rule 56 Statements (ECF Nos. 21-1, 36).

On June 20, 2008,[2] Plaintiff executed a PS Form 2564-A, Information for Pre-Complaint Counseling, Case No. 1B-146-0009-08, alleging that she was illegally discriminated against when Postal Service managers Anthony Frosino ("Frosino") and David Bianchi ("Bianchi"): (1)

---

[1] The substitution of Postmaster General Patrick R. Donahoe for John E. Potter is hereby ordered pursuant to Fed. R. Civ. P. 25(d) (Public Officers; Death or Separation from Office) which provides:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

[2] Pursuant to PS Form 2564-A, Information for Pre-Complaint Counseling, Case No. 1B-146-0009-08, June 9, 2008 is the date on which Plaintiff requested an appointment with a Dispute Resolution Specialist. ECF No. 21-4, Ex. A.

did not train Plaintiff for preferential assignments as an expediter in favor of four junior employees, including co-worker Binnert, and (2) failed to discipline Binnert for engaging in "many hostile confrontations" with Plaintiff. On PS Form 2564-A, Plaintiff alleged that the factors in the Postal Service's discrimination were her age, sex, and reverse national origin (alleging that Binnert is of Native American ancestry). On August 7, 2008, Plaintiff executed a PS Form 2564-C, Withdrawal of Complaint of Discrimination, voluntarily withdrawing her pre-complaint in Case No. 1B-146-0009-08.

On October 3, 2008, Plant Manager Bianchi learned that Plaintiff was creating a hostile work environment for Binnert and Binnert was concerned for her safety. On or about October 10 and October 16, 2008, Plaintiff met with Postal Service managers in pre-disciplinary interviews to discuss her interactions with Binnert and other employees. On October 23, 2008, Postal Service physician Elaine Tunaitis, M.D., placed Plaintiff on emergency leave until Plaintiff underwent a fitness for duty psychological evaluation. On November 10, 2008, Plaintiff was evaluated by forensic psychiatrist Dr. R.P. Singh, M.D.[3]

On December 17, 2008, Plaintiff made initial contact with the Postal Service EEO office, seeking pre-complaint counseling regarding the fitness for duty examination and, thereafter, on December 29, 2008, Plaintiff executed PS Form 2564-A, Information for Pre-Complaint Counseling, Case No. 1B-146-0004-09. In her EEO pre-complaint counseling, Plaintiff alleged that based on her perceived disability, retaliation for past protected activity, and sex, she was discriminated against when she was required to undergo a fitness for duty examination.

On January 21, 2009, Plaintiff was cleared to return to work at the Logistics and Distribution Center. ECF Nos. 1, ¶¶ 34; 36.

---

[3] For purposes of accurately stating the background of this case, the Court has included facts which Plaintiff does not specifically deny in her Local Rule 56.2 Statement, but asserts that genuine issues of material fact exist with respect thereto based on reasons expressly related to the merits of her claims, rather than the timeliness issues raised by Defendant. These facts are also referenced in the Complaint, with only slight variations not affecting their substance. ECF No. 1, ¶¶ 26, 27, 28, 30, 31, 33.

On March 12, 2009, Plaintiff executed a PS Form 2565, EEO Complaint of Discrimination in the Postal Service, Case No. 1B-146-0004-09, alleging that: (1) she was harassed and threatened by her co-worker Binnert after Plaintiff complained that she did not receive training in 2006; (2) that she was required to undergo a fitness for duty examination on November 10, 2008, and (3) that between October 24, 2008 and January 20, 2009, she was placed out of work. In the formal EEO complaint executed on March 12, 2009, Plaintiff alleged discrimination based on a perceived mental disability, retaliation, and sex.

The agency issued a Partial Acceptance/Partial Dismissal of her EEO Formal Complaint on March 23, 2009, accepting that part of the complaint alleging illegal discrimination by Plaintiff's managers in requiring Plaintiff to undergo a fitness for duty exam and dismissing as untimely that part of her complaint alleging that she was discriminated against since November 2006 when she was harassed by her co-worker who received preferential assignments and training by engaging in flirtatious behavior. ECF No. 36, ¶¶ 18, 19. On February 9, 2010, the Postal Service EEO office executed its Final Agency Decision finding that the evidence did not support a finding that Plaintiff was subjected to discrimination as alleged.[4] ECF No. 21-4.

On March 2, 2010, Plaintiff filed the present action alleging that she was discriminated against in 2006 when she was illegally denied training and employment opportunities; between 2006 and March 2008, she was harassed by co-worker Binnert and she was treated less favorably than Binnert, that she reported the same to her managers and to the Postal Service Office of Inspector General on March 13, 2008, and she was discriminated against when Postal Service managers did not intervene to stop or prevent the harassment; and she was discriminated against on October 23, 2008, when she was removed from work and placed on administrative leave

---

[4] The Final Agency Decision endorsed and incorporated by reference the March 23, 2009 decision dismissing as untimely the allegation that Plaintiff was discriminated against since November 2006 when she was harassed by her co-worker who received preferential assignments and training by engaging in flirtatious behavior based upon an earlier complaint on the basis raising the same claim. ECF No. 21-4, Ex. F.

4

without pay, and on November 10, 2008, when she was required to undergo a fitness for duty examination by a forensic psychiatrist. The Complaint also alleged in Count 1 a cause of action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"). ECF No. 1.

Subsequently, Defendant filed the instant Motion for Partial Summary Judgment ("Def.'s Motion"), seeking an order granting partial summary judgment dismissing as time-barred and/or waived Plaintiff's claims under Title VII and the Rehabilitation Act alleging Postal Service management's failure to train and failure to prevent harassment by or preferential treatment toward co-worker Binnert, and dismissing with prejudice Plaintiff's ADEA cause of action under Count I of the Complaint due to failure to exhaust.[5] ECF No. 21.

Responding thereto, Plaintiff filed Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment[6] ("Pl.'s MOL") (ECF No. 35), asking this Court to deny Defendant's motion pursuant to Fed. R. Civ. P. Rule 56(d)[7] on the ground of incomplete discovery, and the need for further discovery in order to oppose Defendant's partial summary judgment motion. Specifically, Plaintiff's sole response to Defendant's timeliness arguments was that a hostile work environment began outside the statutory limitations period and

---

[5] Defendant simultaneously filed a Local Rule 56.1 Statement of Material Facts not in Dispute in Support of Defendant's Motion for Partial Summary Judgment ("Def.'s Local Rule 56.1") (ECF No. 21-1); the Declaration of Wendy A. Blanchard, Esq. ("Blanchard's Decl.") (ECF No. 21-2), Appendix to Local Rule 56.1 Statement of Material Facts not in Dispute ("Def.'s Local Rule 56.1 Appendix") (ECF No. 21-3), with accompanying Exhibits A-F (ECF No. 21-4) relating to Equal Employment Opportunity ("EEO") administrative filings made by Plaintiff preceding the commencement of the action; a Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment Dismissing Unexhausted Employment Discrimination Claims ("Def.'s MOL") (ECF No. 21-5) and the Declaration of Kathryn L. Smith ("Smith's Decl.") (ECF No. 21-6).

[6] Plaintiff also filed a Local Rule 56.2 Opposing Statement ("Pl.'s Local Rule 56.2") (ECF No. 36), including an attached Appendix to Local Rule 56.2 Opposing Statement ("Pl.'s Local Rule 56.2 Appendix") (ECF. No 36-1) and Affirmation (ECF No. 36-2).

[7] Rule 56(d) (When Facts Are Unavailable to the Nonmovant), provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

extended into it. *Id.* Plaintiff contended, additionally, that Defendant waived objection to Plaintiff's ADEA claims. *Id.*

Thereafter, Defendant filed his Reply in Support of Defendant's Motion for Partial Summary Judgment Dismissing Unexhausted Employment Discrimination Claims ("Def.'s Reply") (ECF No. 41), reiterating arguments previously made in favor of dismissal of Plaintiff's training/work assignment and co-worker harassment claims and, further, arguing against Plaintiff's hostile work environment claims due to the lack of timeliness. Additionally, Defendant argued that Plaintiff's expressed need for discovery in opposing partial summary judgment relates to the *merits* of these claims, and not whether Plaintiff waived or timely exhausted such claims.[8] Lastly, however, Defendant withdrew that part of the motion seeking dismissal of Plaintiff's ADEA claim in Count I (ECF No. 1, ¶¶ 44-48), requesting leave to re-file such claim at a later date.

In view of the apparent resolution of discovery issues[9] and Defendant's withdrawal of his request for dismissal of Plaintiff's ADEA claim, Count I of the Complaint (ECF No. 1, ¶¶ 44-48), this decision determines the remaining issues in Defendant's motion.

### III. Discussion

#### A. Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v.*

---

[8] Pursuant to the parties' stipulation ((ECF No. 46) which resolved Plaintiff's earlier filed Motion to Compel (ECF No. 26), Magistrate Judge Marian W. Payson signed an Amended Scheduling Order permitting continued factual and expert witness discovery going forward, as well as the filing of dispositive motions (ECF No. 47).

[9] Plaintiff has access to the documents concerning the EEOC administrative proceedings and the underlying investigative records (ECF No. 21-4, Ex. A-F) and, following the parties' discovery stipulation, has not informed this Court that such documentation is insufficient for purposes of opposing Defendant's motion.

*City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) ("Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.") (citation omitted). The burden is on the moving party to establish the absence of any material factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court assessing a motion for summary judgment is "required to resolve all ambiguities and draw all permissible inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003); *Duse v. International Business Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001) (citing, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013). "The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be reviewed in the light most favorable to the party opposing the motion." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir. 1999) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995)).

Although the district court must view the evidence in favor of the nonmoving party, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 252) (internal alterations and emphasis omitted). Reliance by the nonmoving party on "conclusory allegations or unsubstantiated speculation" is insufficient to defeat a motion for summary judgment. *Id.* at 554 (quoting *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)). Summary judgment is appropriate "[w]here the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, the court's function in deciding a summary

judgment motion is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

These principles appropriately apply in employment discrimination actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (district courts should not "treat discrimination differently from other ultimate questions of fact") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 503, 524 (1993).

### B. Statute of Limitations and Exhaustion Requirements

Title VII is the exclusive judicial remedy available to federal employees who sue for employment discrimination on the basis of race, color, religion, sex, or national origin. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825-33 (1976) ("§ 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal government."). A federal employee who believes he or she has been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved after a mandatory counseling period, the Counselor shall inform the complainant of the right to file an administrative discrimination complaint within 15 days of receipt of the notice. 29 C.F.R. §§ 1614.105(d), 1614.106(a), (b). The employee may then file a civil action in an appropriate district court within 90 days of the final agency decision, or after 180 days from the date of filing of the EEO complaint if the agency has not yet rendered a decision. 42 U.S.C. § 2000e–16(c), 29 C.F.R. § 1614.407(a), (b).

Under Title VII, "a litigant must exhaust available administrative remedies in a timely fashion" before filing suit in federal court. *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996) (Title VII is the exclusive remedy for discrimination by the federal government and requires

exhaustion of administrative remedies.). Federal employees suing under the Rehabilitation Act, likewise, must exhaust administrative remedies. *Bruce v. U. S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002) ("An employee suing the federal government under the Rehabilitation Act must exhaust certain administrative remedies before initiating a lawsuit in federal court."). The purpose of the exhaustion requirement is to give the administrative agency "the opportunity to investigate, mediate, and take remedial action," prior to commencement of suit in district court. *Fleming v. Verizon New York, Inc.*, 419 F. Supp. 2d 455, 462 (S.D.N.Y. 2005).

The requirement that a claim first be presented to the EEO office for resolution is not jurisdictional and is subject to waiver, estoppel, and equitable tolling. *Terry v. Ashcroft*, 336 F.3d 128, 150 (2d Cir. 2003) ("As the Supreme Court has stated, 'filing a timely charge of discrimination with the EEOC is ... a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'"); see also *Briones v. Runyon*, 101 F.3d at 290. The Second Circuit has treated the timeliness requirement in 29 C.F.R. § 1614.105 as analogous to the requirement that a private sector employee must first bring his/her claim to the Equal Employment Opportunity Commission ("EEOC") for resolution. *Terry v. Ashcroft*, 336 F.3d at 150 (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359-69 (2d Cir. 2001)) (treating this EEO exhaustion requirement as identical to the EEOC exhaustion requirement).

### C. Parties' Arguments For and Against Partial Summary Judgment

Here, Defendant states that Plaintiff initiated her pre-complaint counseling on December 17, 2008 (ECF No. 21-4, Ex. C), and the 45th day prior to initiating contact fell on November 2, 2008. Defendant contends that all claims in the district court Complaint arising before November 2, 2008, are untimely, and subject to dismissal.

Essentially, the four grounds offered in support of Defendant's motion for an order granting partial summary judgment dismissing these claims as not timely exhausted within the

45-day statute of limitations required by 29 C.F.R. 1614.105(a)(1) are that: (1) in August 2008, Plaintiff executed a waiver of her rights to proceed on allegations regarding training/work assignments and co-worker harassment; (2) Plaintiff's claims regarding training/work assignments and uncorrected co-worker harassment constitute discrete employment actions which cannot be re-crafted into a continuing violation alleging a discriminatory policy or mechanism, or "a hostile work environment" in an effort to get around the 45-day statute of limitations; (3) even if training/work assignments and uncorrected co-worker harassment are accepted as proper components of a hostile work environment claim, such claim was not timely raised within the 45-day statute of limitations and cannot proceed; and (4) notwithstanding the hostile work environment claim, Plaintiff's separate, compensable causes of action for training/work assignments and uncorrected co-worker harassment are untimely and must be dismissed.

Opposing partial summary judgment, Plaintiff responds that these claims should not be dismissed because "[h]ostile work environment is one claim which permits employer liability for discriminatory acts committed outside of the statutory limitations period which extend into the statutory limitations period." ECF No. 36. Plaintiff argues that (1) in the EEO complaint, she identified a "Date on which alleged act(s) of Discrimination Took Place" as "11/2006-PRESENT" and incorporated by reference the "WNY Performance Cluster Policy on Workplace Harassment" which states, "Harassment is unwelcome verbal or physical conduct which is so severe or pervasive it changes the conditions of one's employment by creating a hostile, intimidating, or abusive environment."; (2) the EEO office was alerted to Plaintiff's hostile work environment claim and that she had experienced a hostile work environment throughout most of her employment as stated in the EEOC Dispute Resolution Specialist's (DRS) Inquiry Report that "from November 2006 and continuing, subjected to 3rd party sexual harassment when a co-

45-day statute of limitations required by 29 C.F.R. 1614.105(a)(1) are that: (1) in August 2008, Plaintiff executed a waiver of her rights to proceed on allegations regarding training/work assignments and co-worker harassment; (2) Plaintiff's claims regarding training/work assignments and uncorrected co-worker harassment constitute discrete employment actions which cannot be re-crafted into a continuing violation alleging a discriminatory policy or mechanism, or "a hostile work environment" in an effort to get around the 45-day statute of limitations; (3) even if training/work assignments and uncorrected co-worker harassment are accepted as proper components of a hostile work environment claim, such claim was not timely raised within the 45-day statute of limitations and cannot proceed; and (4) notwithstanding the hostile work environment claim, Plaintiff's separate, compensable causes of action for training/work assignments and uncorrected co-worker harassment are untimely and must be dismissed.

Opposing partial summary judgment, Plaintiff responds that these claims should not be dismissed because "[h]ostile work environment is one claim which permits employer liability for discriminatory acts committed outside of the statutory limitations period which extend into the statutory limitations period." ECF No. 36. Plaintiff argues that (1) in the EEO complaint, she identified a "Date on which alleged act(s) of Discrimination Took Place" as "11/2006-PRESENT" and incorporated by reference the "WNY Performance Cluster Policy on Workplace Harassment" which states, "Harassment is unwelcome verbal or physical conduct which is so severe or pervasive it changes the conditions of one's employment by creating a hostile, intimidating, or abusive environment."; (2) the EEO office was alerted to Plaintiff's hostile work environment claim and that she had experienced a hostile work environment throughout most of her employment as stated in the EEOC Dispute Resolution Specialist's (DRS) Inquiry Report that "from November 2006 and continuing, subjected to 3rd party sexual harassment when a co-

45-day statute of limitations required by 29 C.F.R. 1614.105(a)(1) are that: (1) in August 2008, Plaintiff executed a waiver of her rights to proceed on allegations regarding training/work assignments and co-worker harassment; (2) Plaintiff's claims regarding training/work assignments and uncorrected co-worker harassment constitute discrete employment actions which cannot be re-crafted into a continuing violation alleging a discriminatory policy or mechanism, or "a hostile work environment" in an effort to get around the 45-day statute of limitations; (3) even if training/work assignments and uncorrected co-worker harassment are accepted as proper components of a hostile work environment claim, such claim was not timely raised within the 45-day statute of limitations and cannot proceed; and (4) notwithstanding the hostile work environment claim, Plaintiff's separate, compensable causes of action for training/work assignments and uncorrected co-worker harassment are untimely and must be dismissed.

Opposing partial summary judgment, Plaintiff responds that these claims should not be dismissed because "[h]ostile work environment is one claim which permits employer liability for discriminatory acts committed outside of the statutory limitations period which extend into the statutory limitations period." ECF No. 36. Plaintiff argues that (1) in the EEO complaint, she identified a "Date on which alleged act(s) of Discrimination Took Place" as "11/2006-PRESENT" and incorporated by reference the "WNY Performance Cluster Policy on Workplace Harassment" which states, "Harassment is unwelcome verbal or physical conduct which is so severe or pervasive it changes the conditions of one's employment by creating a hostile, intimidating, or abusive environment."; (2) the EEO office was alerted to Plaintiff's hostile work environment claim and that she had experienced a hostile work environment throughout most of her employment as stated in the EEOC Dispute Resolution Specialist's (DRS) Inquiry Report that "from November 2006 and continuing, subjected to 3rd party sexual harassment when a co-

45-day statute of limitations required by 29 C.F.R. 1614.105(a)(1) are that: (1) in August 2008, Plaintiff executed a waiver of her rights to proceed on allegations regarding training/work assignments and co-worker harassment; (2) Plaintiff's claims regarding training/work assignments and uncorrected co-worker harassment constitute discrete employment actions which cannot be re-crafted into a continuing violation alleging a discriminatory policy or mechanism, or "a hostile work environment" in an effort to get around the 45-day statute of limitations; (3) even if training/work assignments and uncorrected co-worker harassment are accepted as proper components of a hostile work environment claim, such claim was not timely raised within the 45-day statute of limitations and cannot proceed; and (4) notwithstanding the hostile work environment claim, Plaintiff's separate, compensable causes of action for training/work assignments and uncorrected co-worker harassment are untimely and must be dismissed.

Opposing partial summary judgment, Plaintiff responds that these claims should not be dismissed because "[h]ostile work environment is one claim which permits employer liability for discriminatory acts committed outside of the statutory limitations period which extend into the statutory limitations period." ECF No. 36. Plaintiff argues that (1) in the EEO complaint, she identified a "Date on which alleged act(s) of Discrimination Took Place" as "11/2006-PRESENT" and incorporated by reference the "WNY Performance Cluster Policy on Workplace Harassment" which states, "Harassment is unwelcome verbal or physical conduct which is so severe or pervasive it changes the conditions of one's employment by creating a hostile, intimidating, or abusive environment."; (2) the EEO office was alerted to Plaintiff's hostile work environment claim and that she had experienced a hostile work environment throughout most of her employment as stated in the EEOC Dispute Resolution Specialist's (DRS) Inquiry Report that "from November 2006 and continuing, subjected to 3rd party sexual harassment when a co-

worker received preferential treatment for engaging in provocative and flirtatious behaviors with management in regards to overtime, higher level bid assignments and training"; (3) in Defendant's Local Rule 56.1 Statement, he conceded that a hostile work environment existed in Plaintiff's workplace as early as October 3, 2008 as evidenced by the statement: "On October 3, 2008, Plant Manager David Bianchi learned that Plaintiff was creating a hostile work environment for Binnert and that Binnert was concerned for her safety."; (4) several allegations in the district court Complaint (ECF No. 1, ¶¶ 18, 19, and 21)[10] show that she complained of a hostile work environment throughout most of her employment.

Acknowledging that a government agency must be on sufficient notice of a federal employee's claim of discrimination in order to have the opportunity to investigate and voluntarily remedy discrimination, Plaintiff argues that "the federal regulatory purpose would not be thwarted in this case by denying partial summary judgment on the issue of Plaintiff's training and harassment." ECF No. 36.

I address the parties' arguments below.

### 1. Waiver of Training/Work Assignments and Co-worker Harassment Claims

As earlier stated, Plaintiff initiated her pre-complaint counseling on December 17, 2008 (ECF No. 21-4, Ex. C) and, as Defendant asserts, the 45th day prior to initiating contact fell on

---

[10] The Complaint alleges the following in the cited paragraphs:

> ¶ 18. Thereafter, for a period of years, there was a pattern of favorably [sic] treatment of Ms. Binnert by male management employees who at the same time treated Ms. Hanfland in a less favorable manner.
>
> ¶ 19. During this time, Ms. Binnert consistently harassed Ms. Hanfland, accusing her of stealing overtime opportunities, receiving more favorable assignments, stalking her and threatening to harm her possessions or potentially threatening physical abuse.
>
> ¶21. On March 13, 2008, Ms. Hanfland wrote to the Office of Inspector General of the United States Postal Service, complaining of Binnert's harassment of her and the special treatment received by Binnert, as well as the behavior of among others, including, but not limited to acting MDO, William McDowell.

November 2, 2008. Previously, on PS Form 2564-A Information for Pre-Complaint Counseling, Case No. 1B-146-0009-08, dated June 9, 2008 (ECF No. 21-4, Ex. A), Plaintiff described the incident or action prompting her to seek EEO counseling as follows:

> On May 9, 2008, I realized that my TMJ syndrome was caused by post-traumatic stress from many hostile confrontations which had been initiated by a co-worker, Tanya Binnert. These incidents were a direct result of discrimination when management bypassed my seniority for preferred assignments and chose others junior to me. Tanya Binnert was shown preferential treatment when given these opportunities and accused me of attempting to take these away from her by threatening me which caused this illness. Management refused to discipline her.

*Id.* She explained her belief that she was treated differently than other employees in similar positions by listing Binnert and three other junior employees as individuals who she stated were "trained as an expediter (preferred assignment) before [her] dismissing [her] contract rights as a Senior PTF Seniority Standing." *Id.* Frosino and Bianchi are listed as Management who took the action prompting her to seek counseling. *Id.*

It is undisputed that on August 7, 2008, Plaintiff voluntarily withdrew, in its entirety, her request for EEO counseling (PS Form 2564-C) in Case No. 1B-146-0009-08 (ECF No. 21-4, Ex. B), which request had been submitted previously via Information for Pre-Complaint of Discrimination dated June 20, 2008 (PS Form 2464-A), Case No. 1B-146-0009-09. On PS 2564-C, the form used by Plaintiff to withdraw the Complaint of Discrimination, the following unambiguous language appears above her signature: "I fully understand that by withdrawing the complaint or allegation(s) I have withdrawn, I am waiving rights to any further appeal of this allegation(s) through the EEO process. I further stipulate that my withdrawal did not result from threat, coercion, intimidation, promise or inducement." ECF No. 21-4.

Plaintiff subsequently initiated contact with an EEO counselor on December 17, 2008 and, thereafter, on March 12, 2009 filed an EEO complaint setting forth the following allegations regarding training/work assignments and co-worker harassment:

> Employee Tanya Binnert harassed and threatened me in a hostile manner after I complained about the preferential treatment that she received from management as a result of sexually harassing management. This began in 11/2006 when she received higher level assignment training (expediter) which offered her many opportunities for overtime. I did not receive this same training until I prevailed in a grievance in 9/2007.

ECF No. 21-4, Ex. D.

Dismissing these allegations as untimely, the EEO rejected Plaintiff's attempt to revive the same allegations pre-dating June 9, 2008 by differently framing them, using other words, and indicated that such allegations were not accepted for investigation. ECF No. 21-4, Ex. E.

As Defendant astutely points out, when a plaintiff withdraws his or her EEO complaint, he or she waives the claims set forth therein. *See Gentile v. Potter*, 509 F. Supp. 2d 221, 223 n.6 (E.D.N.Y. 2007); *Lucenti v. Potter*, 432 F. Supp. 2d 347, 358 (S.D.N.Y. 2006) (citing *Littlejohn v. Henderson*, No. 01 Civ. 2772 (JG), 2003 WL 21738608, at *3 (E.D.N.Y. June 19, 2003)) ("[T]he withdrawal of an EEO complaint must be considered as a waiver of the underlying discrimination claims.").

Plaintiff has failed to present any admissible evidence demonstrating that her executed waiver was invalid, or to articulate any legal argument that such waiver is unenforceable. Indeed, she does not appear to contest the waiver of the allegations regarding training/work assignments and co-worker harassment pre-dating the June 9, 2008 EEOC complaint. The Complaint does not allege any new discriminatory actions regarding training/work assignments and co-worker harassment occurring between November 2, 2008 and December 17, 2008, or indeed, beyond June 9, 2008. I conclude that these claims, therefore, are unequivocally waived

and Plaintiff cannot maintain such claims in this lawsuit. Due to their untimeliness, these allegations were never investigated and, therefore, are unexhausted. As such they must be dismissed.

### 2. The Continuing Violation Doctrine is Inapplicable To Multiple Discrete Claims

For purposes of the statute of limitations, employment discrimination must be categorized as "discrete acts" or "continuing violations." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-115 (2002). A discrete acts occurred on the day it happened, as distinguished from a continuing violation which "occurs over a series of days or perhaps years" and "is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Id.*

In *Morgan*, the Supreme Court rejected the view that a series of "related discrete acts" can constitute a continuous "unlawful employment practice" for purposes of statute of limitations, declaring that each discrete act is "a separate actionable 'unlawful employment practice.'" *Id.* at 111, 114 ("There is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing."). Discrete discriminatory acts are not actionable if time-barred, even when related to acts alleged in timely filed charges. *Id.* at 113. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* Thus, the charge must be filed within the applicable statutory time period after the discrete discriminatory act occurred, *i.e.*, a discrete act of discrimination is time-barred if it occurred prior to the applicable limitations period. *Id.*

The *Morgan* Court discussed examples of discrete acts to which the continuing violation exception does not apply: a retaliatory or discriminatory termination, failure to promote, denial of transfer or refusal to hire. *Id.* at 111, 114. Here, Defendant asserts that additional discrete employment actions such as training/work assignment decisions and disciplinary actions have

been identified and considered by courts in this Circuit as not constituting a continuing violation. *See Ellis v. Long Island R.R.Co.*, No. 05-CV-3847, 2008 WL 838766, at *4 (E.D.N.Y. March 31, 2008) (discipline should not be considered part of a continuing violation); *Barrow v. Ford Motor Co.*, No. 03-CV-621A, 2007 WL 1655660, at *9 (W.D.N.Y. June 5, 2007) (repeated denials of promotions and training opportunities are discrete acts); *Daniels v. Niagara Mohawk Power Corp.*, No. 04-CV-0734S, 2007 WL 925759, at *4 (W.D.N.Y. March 26, 2007) (discriminatory transfer, suspension, discipline, promotion, compensation and the like are discrete acts of discrimination); *Rechichi v. Eastman Kodak Co.*, No. 02-CV-6249, 2004 WL 1698333, at *5 (W.D.N.Y. Jan. 21, 2004) (discriminatory pay, failure to promote, and failure to train are discrete discriminatory acts); *Costanzo v. U.S. Postal Serv.*, No. 00 Civ. 4044(NRB), 2003 WL 1701998, at *5 (S.D.N.Y. March 31, 2003) (discrete acts include job assignments).

The *Morgan* Court distinguished hostile work environment as different in kind from discrete acts. A hostile work environment encompasses a series of related acts which may not be actionable standing alone and, therefore, constitutes a continuing violation. *Id.* at 115-18. Continuing violations such as hostile environment claims by "their very nature involve[s] repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day." *Id.* at 115, 117. The Supreme Court held that a charge alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period. *Id.* at 101.

Applying the principles set forth in *Morgan* regarding the nature of discrete acts, along with the above-cited pertinent, applicable rulings of courts in the Second Circuit identifying additional discrete discriminatory acts, and considering Plaintiff's omission to advance any contrary argument against Defendant's position on this issue, I am persuaded that the unrelated decisions by Postal Service managers regarding training/work assignments and whether

discipline was warranted for Binnert's actions, constitute discrete employment actions, *i.e.*, separate, actionable unlawful employment practices, and are not part of a continuing violation. These claims, arising before November 2, 2008, are unpreserved for failure to timely exhaust. Therefore, I agree that Plaintiff cannot circumvent the EEO 45-day requirement by simply re-casting her unexhausted discrete claims regarding training/work assignments decisions and undisciplined co-worker harassment alleged in her Complaint, as a hostile work environment claim. It is manifestly clear, in any event, that a hostile environment claim cannot resuscitate time-barred discrete discriminatory acts. *Sundaram v. Brookhaven Nat. Labs.*, 424 F. Supp. 2d 545, 561 (E.D.N.Y. 2006) (citing *Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004) and *Elmenayer v. ABF Freight Sys.*, Inc., 318 F.3d 130, 134 (2d Cir. 2003)) (citing *Morgan*, 536 U.S. at 114). Absent timely exhaustion, these claims must be dismissed.

### 3. Untimely Hostile Work Environment Claim

Without doubt, Plaintiff is correct in her assessment that a plausibly stated claim for hostile work environment must allege discriminatory conduct that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Piston v. Monroe County*, No. 08-CV-6435P, 2012 WL 44906652, at *9 (W.D.N.Y. Sept. 27, 2012) (quoting *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir.2002)). However, even assuming that the Complaint plausibly states a cause of action for hostile work environment, such claim has not been timely exhausted.

Plaintiff seeks to defeat Defendant's motion on the ground that a hostile work environment claim permits employer liability for discriminatory acts committed outside of the statutory limitations period which extend into the statutory limitations period. The *Morgan* Court stated that hostile work environment claims, for purposes of assessing liability, are not

time barred, provided that an act contributing to the hostile environment takes place within the relevant statutory time period. *Morgan*, 536 U.S at 105, 117.

The arguments presented in opposition, plainly, demonstrate Plaintiff's reliance on alleged discriminatory acts regarding training/work assignments and co-worker harassment as the components of this hostile environment claim. This is not a situation where Plaintiff, for whatever reason, waited until December 17, 2008 to contact an EEO counselor regarding discriminatory acts training/work assignments and uncorrected co-worker harassment prior to November 2, 2008 and experienced at least one act of such discrimination during the relevant statute of limitations. The Complaint does not allege that Plaintiff was denied training or a preferential work assignment, or that she was harassed or threatened by Binnert at any time between November 2, 2008 and December 17, 2008. Even construing the allegations in the Complaint favorably, the only discriminatory act alleged to have occurred within this 45-day statute of limitations is the forensic psychiatric examination performed on November 10, 2008 by Dr. Singh, a non-Postal Service employee. Plaintiff has not sufficiently demonstrated this evaluation is a component act of a hostile work environment claim.

That the EEO complaint and the EEO Dispute Resolution Specialist's (DRS) Inquiry Report included Plaintiff's identification of the dates on or within which the alleged discriminatory acts occurred is unavailing to demonstrate the timeliness of her claims, given that the supporting allegations set forth in these documents more narrowly circumscribed the time frames during which such acts are alleged to have occurred. In such circumstance, the dates provided by Plaintiff in these administrative filings are merely conclusory and cannot be considered a sufficient basis for avoiding partial summary judgment.

Notably, regarding the EEO office's awareness of the hostile work environment claim and that she had experienced a hostile work environment throughout most of her employment,

17

the DRS report clearly also contains a statement specifically referencing Plaintiff's withdrawal on August 7, 2008 of the EEO Pre-complaint Case #1B-146-0009-08, noting "Counselee previously raised a claim of management's failure to respond appropriately to stop co-worker harassment, specifically naming Clerk Binnert." ECF No. 21-4. In view of such withdrawal, and the ultimate dismissal of these allegations as untimely, any notice the EEO office may have had concerning these alleged discriminatory acts was rendered ineffective and irrelevant; any opportunity for investigation and/or voluntarily remedying the alleged discrimination was effectively precluded. The fact remains that the hostile work environment claim was specifically *not* investigated based on Plaintiff's waiver of these underlying allegations.

Nor am I convinced by Plaintiff's argument that Defendant's concession that a hostile work environment existed as early October 3, 2008 when Bianchi learned that Plaintiff was creating a hostile work environment for Binnert, in any way supports the timeliness of Plaintiff's own personal claim of discrimination due to a hostile work environment. Binnert's report to management about Plaintiff's harassing conduct also fell outside the 45-day statute of limitations, in any event.

Furthermore, Plaintiff's reliance on *Langford v. International Union of Operating Engineers, Local 30*, 765 F. Supp. 2d 486, 498 (S.D.N.Y. 2011), to demonstrate timeliness in this case, is misplaced. In *Langford*, the district court ruled timely plaintiff's hostile work environment claim based upon allegations that discriminatory actions were taken "*throughout the period of her employment*" and because part of her employment fell within the applicable statutory limitations period. *Id.* Here, the undisputed facts reflect that Plaintiff alleged that she was discriminated against in 2006 when she was illegally denied training and employment opportunities—between 2006 and March 2008, she was harassed by co-worker Binnert and she was treated less favorably than Binnert—that she reported the same to her managers and to the

Postal Service Office of Inspector General on March 13, 2008—and she was discriminated against when Postal Service managers did not intervene to stop or prevent the harassment. ECF No. 36. None of these discriminatory acts are alleged to have occurred during the 45-day limitations period. Therefore, the allegation that Defendant's alleged discriminatory conduct occurred "for a period of years," as distinguished from the language of the allegation in *Langford*, is insufficient to demonstrate the timeliness of Plaintiff's hostile work environment claim.

### 4. Individual, Compensable Claims Based on Training/Work Assignments and Co-Worker Harassment are Untimely.

I briefly address Defendant's contention that even if Plaintiff's hostile work environment claim was properly pleaded and timely exhausted, such continuing violation claim must be distinguished from the individual, compensable claims for illegal discrimination by the Postal Service for its decisions regarding training/work assignments and unchecked co-worker harassment. In this respect, Defendant argues that these discrete claims, standing alone, are not compensable and must be dismissed for failure to timely exhaust.

Defendant rests this contention on the Second Circuit's application in *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012) of two *Morgan* Court rulings: that discrete discriminatory acts are not actionable if time-barred, even when related to acts alleged in timely filed charges, and each discrete discriminatory act starts a new clock for filing charges alleging that act (*Morgan*, 536 U.S. at 111, 113).

The *Chin* plaintiffs, in the context of a "continuing violation" disparate impact claim, proved they had not been promoted because of their race. Relying on *Morgan*, the Second Circuit, finding that "discrete acts which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts

occurring within the limitations period," vacated the district court's awards of compensatory damages for time-barred discrete acts of non-promotion, and remanded for a new trial on damages. *Id.* at 135, 157. As Defendant points out, the *Chin* court found this position supported by "every circuit to consider the question after *Morgan*." *Id.* at 157.

I concur. Notwithstanding the alleged hostile work environment claim, Plaintiff may not assert claims for decisions regarding training/work assignments and unchecked co-worker harassment pre-dating the November 2, 2008 reporting deadline because these specific, compensable discriminatory acts were not timely exhausted. *See Nakis v. Potter*, 433 F. Supp. 2d 398 (S.D.N.Y. 2006).

## IV. Conclusion

For the reasons stated herein above, I hereby grant Defendant's Motion for Partial Summary Judgment (ECF No. 21) dismissing Plaintiff's claim under Title VII and the Rehabilitation Act for failure to train and dismissing Plaintiff's claim for any alleged failure by Postal Service management to prevent harassment by or preferential treatment toward Binnert. Furthermore, Defendant is hereby granted leave to re-file, at a later date, its Motion to Dismiss Plaintiff's ADEA claims for failure to exhaust.

IT IS SO ORDERED.

Dated: August 14, 2015
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court